UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DERRION JOSEPH LEMOINE** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER: 22-201** |
| **ST. TAMMANY PARISH SHERIFF'S OFFICE, ET AL.** | **DIVISION "5"** |

**ORDER AND REASONS**

Before the Court is the Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) and/or for Summary Judgment Pursuant to F.R.C.P. 56 (rec. doc. 15) filed by Defendant Zacharias Ussery.[1] Plaintiff Derrion Joseph Lemoine has filed no opposition to the motion. Having reviewed the motion and the case law, the Court rules as follows.

**I.   Background**

On August 29, 2021, Hurricane Ida battered Louisiana, including St. Tammany Parish. During the storm, the St. Tammany Parish Jail ("the jail") lost electricity, the air conditioner broke, and the roof leaked, creating condensation on the concrete floors. (Rec. doc. 15-6 at ¶ 5). At the time Hurricane Ida struck Louisiana, Lemoine was housed in the Restrictive Housing Unit ("RHU"), where violent offenders are housed. (Rec. doc. 15-7 at ¶ 15). Deputies at the jail were aware that Lemoine was in the RHU because he was violent, having been charged with double armed robbery, kidnappings, and murders. (Rec. doc. 15-6 at ¶ 8; Rec. doc. 15-7 at ¶ 15).

Lemoine had a well-known disposition for defiant and combative behavior at the jail. (Rec. doc. 15-4 at ¶ 12; Rec. doc. 15-6 at ¶ 8; Rec. doc. 15-7 at ¶ 15). Lemoine garnered

---

[1] This Court dismissed Ussery's co-defendant, the St. Tammany Parish Sheriff's Office, on June 14, 2022. (Rec. doc. 10).

his reputation due to aggravated disobedience, fighting, possessing shanks, battery, disorderly conduct, tampering with surveillance equipment, and damage to property. (Rec. doc. 15-4 at ¶ 7). From 2016 through August 30, 2021, Lemoine was disciplined 19 times and pleaded guilty to 17 of those charges. (*Id.* at ¶ 8).

On August 30, 2021, Deputy Ardeneaux informed Ussery that Lemoine continued to cover the camera in his cell despite numerous warnings not to do so. (Rec. doc. 15-6 at ¶ 7). Covering one's camera is against the rules and compromises the jail's security. (*Id.*). Despite several more warnings, Lemoine refused to stop covering his camera. (*Id.*). As a result, Ussery was ordered to remove Lemoine from his cell. (*Id.* at ¶ 9).

After arriving at Lemoine's cell, Ussery attempted several times to persuade Lemoine to refrain from covering his camera to avoid being "dry celled." (*Id.* at ¶ 10).[2] Lemoine defiantly refused to cooperate. (*Id.*). He began to curse and scream at Ussery, who entered Lemoine's cell and asked Lemoine to face the wall and place his hands behind his back. (*Id.* at ¶ 12). When Ussery attempted to handcuff Lemoine, Lemoine turned around and resisted, forcing Ussery to shove him against the wall and necessitating the assistance of other deputies to subdue Lemoine into compliance. (*Id.* at ¶ 14).

About this time, Deputy Cole Willie had just slipped on the wet floors and was in the office reporting his fall when he noticed on the security camera the altercation in the RHU involving several deputies and Lemoine. (Rec. doc. 15-7 at ¶ 7). When Willie arrived to assist, Lemoine was already handcuffed but still combative. (*Id.* at ¶ 9). Willie assisted Ussery in escorting Lemoine out of his cell and down the hallway to a nearby bench. (*Id.* at ¶ 11). Lemoine remained defiant and resisted the escort. (*Id.*). As they walked down the

---

[2] "Dry celling" refers to the forceful removal of an inmate from his cell.

hall, Lemoine was combative, pushing and pulling away, eventually pushing Willie into another deputy. (*Id.*). The hallway down which the deputies were escorting Lemoine was the same hallway where Willie had slipped on the slick floors. (*Id.* at ¶ 12). Lemoine's resistance ultimately caused all three men to slip on the wet floors and fall. (*Id.* at ¶ 13). Lemoine struck his head on the floor, causing it to bleed. (*Id.*). The deputies helped Lemoine to stand, and Willie escorted Lemoine to medical. (*Id.* at ¶¶ 13, 14). Lemoine was ultimately disciplined for continuing to cover the camera in his cell. (*Id.* at ¶ 11).

On February 22, 2022, Lemoine filed a *pro se* complaint against the jail and Ussery in which he seeks damages under 42 U.S.C. § 1983. Lemoine alleges that on August 30, 2021, Ussery "used excessive use of force by slamming me against the wall and then slamming me on the floor, and then lied and stated in a Disciplinary Report 2 that I slipped and fell due to the floors being wet." (Rec. doc. 3).

## II.    Law and Analysis

### A.    Standard for a Motion for Summary Judgment[3]

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time

---

[3] As the Court finds Ussery's summary judgment motion dispositive, this Court addresses only the summary judgment motion (as opposed to the motion to dismiss), as Ussery attached evidence to the motion that is not referenced in Lemoine's complaint. *Rhodes v. U.S. Off. of Special Couns.*, No. 3:05-CV-2402-K, 2008 WL 4791380, at *3 (N.D. Tex. Oct. 30, 2008) ("The documents thus constitute matters outside the pleadings, and should not be considered for purposes of the motion to dismiss. The exercise of such discretion appears especially appropriate when the party seeking a Rule 12(b)(6) dismissal also moves for summary judgment in the alternative."). There is thus no need for this Court to address the issue of qualified immunity in Ussery's motion to dismiss.

for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Further, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet a court only draws reasonable inferences

4

in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

**B. Analysis**

In order to succeed on a Section 1983 claim that a defendant violated his Fourth Amendment right against excessive force, a plaintiff must show that he was seized and that he "suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Ballard v. Burton*, 444 F.3d 391, 402 (5th Cir. 2006) (quoting *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (citations and internal quotation marks omitted)); *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather

5

than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. In this "reasonableness" inquiry, "the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. Excessive force claims are necessarily fact-intensive; whether the force used is "excessive" or "unreasonable" depends on "the facts and circumstances of each particular case." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989).

For the reasons that follow, the Court finds that Ussery's actions were not objectively unreasonable under the factual circumstances of this case. As Lemoine failed to oppose Ussery's motion,[4] the only evidence before this Court reveals that Lemoine is a combative and violent prisoner prone to resist authority. The affidavits of Corporal Johnathan Lott and Deputies Ussery and Willie, and the video evidence submitted by Ussery[5] corroborate Ussery's version of events. Lemoine defied Ussery by refusing to remove his hand from his cell camera, and he resisted Ussery when Ussery attempted to remove him from his cell, cursing and screaming at him. He remained defiant and combative when Ussery and Willie began to escort him down the hall, even shoving Willie into another deputy. It is clear that Lemoine's attempts to resist the escort were the reason all three men fell in the hallway, causing Lemoine to suffer his injury. In other words, Lemoine caused his own injury.

To succeed on his Section 1983 claim, Lemoine must establish that the force was not applied in a good-faith effort to maintain or restore discipline, but maliciously and

---

[4] "A summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996).
[5] Rec. doc. 15-5.

6

sadistically to cause harm, and that he suffered injury. *Brewer v. Prier*, 334 F. App'x 618, 619 (5th Cir. 2009) (citing *Hudson*, 503 U.S. at 6-7).[6] The only evidence before this Court demonstrates that Ussery tried to obtain Lemoine's compliance through non-forceful means, but Lemoine's continued noncompliance made the use of force necessary. *Brewer*, 334 F. App'x at 619. Further, the application of that force was not clearly excessive to the need to restore discipline such that it constituted a constitutional violation. *Id.* Measured force used on a prisoner to obtain compliance with lawful orders and to restore discipline is not objectively unreasonable under well-established Fifth Circuit case law. *See, e.g.*, *Dawson v. Anderson Cty., Tex.*, 566 F. App'x 369, 370 (5th Cir. 2014). There is no genuine issue of material fact that Ussery's use of measured force was necessary to restrain Lemoine and restore discipline at the jail. Summary judgment is warranted here.

**III. Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that the Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) and/or for Summary Judgment Pursuant to F.R.C.P. 56 (rec. doc. 15) is **GRANTED**, and Plaintiff Derrion Joseph Lemoine's claims against Defendant Zacharias Ussery are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this __20th__ day of __December__, 2022.

_____
MICHAEL B. NORTH

---

[6] That Lemoine suffered an injury is of no moment here, Not only did Lemoine cause his own injury by actively resisting the escort, the Supreme Court has held that "[t]he 'core judicial inquiry'. . . was not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)).

**UNITED STATES MAGISTRATE JUDGE**